CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 31 2014
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DERRICK L. LARK, <br><br> Plaintiff, <br> v. <br><br> WESTERN HERITAGE INSURANCE CO., et al., <br><br> Defendant, <br><br> and <br><br> ANTUAN E. JONES, <br><br> Plaintiff, <br> v. <br><br> WESTERN HERITAGE INSURANCE CO., et al., <br><br> Defendant. | Civil Action No. 7:13-CV-00395 <br><br><br><br><br><br><br><br><br><br> Civil Action No. 7:13-CV-00396 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

This declaratory judgment action asks the court to determine the amount of insurance coverage available in connection with two tort lawsuits filed by plaintiffs Derrick Lark and Antuan Jones after each was allegedly assaulted outside a restaurant operated by Peck Investments, LLC ("Peck Investments"). The matter is presently before the court on the motion for summary judgment filed by defendant Western Heritage Insurance Company ("Western Heritage"). For the following reasons, that motion will be granted in part and denied in part.

**Factual and Procedural Background**

The following facts are either undisputed, or, where disputed, are presented in the light most favorable to the plaintiffs. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (stating that all evidence must be construed in the light most favorable to the party opposing summary judgment).

I. *The Insurance Policy:*

At issue in this case is an insurance policy issued by Western Heritage to Tammy Peck, c/o Redford & Peck Enterprises (now Peck Investments), d/b/a Schooners for the contract period of

December 22, 2009 to December 22, 2010 ("the policy"). See Insurance Policy, Answer Ex. 2, Docket No. 4-2. The policy provides commercial general liability insurance coverage for Schooners, a restaurant operated by Peck Investments in Roanoke County, Virginia.

Under the terms of the policy, Western Heritage agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'…to which this insurance applies." Answer Ex. 2 at 50. The policy further provides that "[t]his insurance applies to 'bodily injury'…only if the 'bodily injury'…is caused by an 'occurrence' that takes place in the 'coverage territory.'" Id. An "occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 63. The policy excludes from coverage any "'bodily injury'…[that is] expected or intended from the standpoint of the insured." Id. at 51. This exclusion, however, "does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." Id. The general policy insures Peck Investments up to $1,000,000 per occurrence, or $2,000,000 in the aggregate. Id. at 46.

A number of add-on endorsements "change[] the policy." See, e.g., id. at 79. Two endorsements are relevant here. First, an "Assault or Battery Exclusion" Endorsement explicitly excludes from coverage any

> "bodily injury"…or medical expense arising out of assault or battery or out of any act or omission in connection with the prevention or suppression of such acts, including failure to warn, train or supervise, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

Id. A separate "Assault and/or Battery Limited Liability Coverage" Endorsement, however, provides that Western Heritage will pay "all sums [that the insured] become[s] legally obligated to pay as 'damages' because of… 'bodily injury'…to any person arising out of an Assault and/or Battery." Id. at 87. Coverage under this endorsement is limited to $100,000 per "Event" and

2

$300,000 in the aggregate. Id. An "Event" is defined as "an act or series of acts based on or arising out of the same assault and/or battery." Id. at 88.

The policy also provides that Western Heritage has "the right and duty to defend the insured against any 'suit' seeking [] damages." Id. at 50. Western Heritage has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'…to which [the policy] does not apply," however. Id. The assault and battery endorsement similarly provides that Western Heritage

> will have the right and duty to defend any suit against [the insured]...[but] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in [the endorsement] has been exhausted…[Western Heritage] will have no duty to defend the insured against any suit seeking 'damages' to which this insurance does not apply.

Id. at 87. The assault and battery endorsement explicitly limits Western Heritage's liability to "damages," meaning "a monetary judgment, award, or settlement," but "not includ[ing] criminal restitution." Id. at 88.

## II. *Procedural History:*

In December 2012, Derrick Lark and Antuan Jones filed separate tort lawsuits in the Roanoke County Circuit Court ("the underlying actions"), naming Peck Investments and several individual Schooners employees as defendants (collectively, the "Peck Defendants"). In their respective complaints, Lark and Jones each allege that they were assaulted by Schooners employees outside the restaurant on December 4, 2010, resulting in serious bodily injuries. See Jones Complaint, Answer Ex. 1, Docket No. 4-1; Lark Complaint, Answer Ex. 3, Docket No. 4-3. In their complaints, Lark and Jones assert various negligence claims arising from these assaults and seek compensatory and punitive damages. Id.

Lark and Jones then filed declaratory judgment actions against Western Heritage and Peck Investments in the Roanoke County Circuit Court, asking the state court to (1) declare that Western

3

Heritage provided insurance coverage in connection with the assaults alleged in their tort lawsuits; (2) determine the extent of that coverage; and (3) declare that their assaults constitute separate "events" as defined in the policy. See Declaratory Judgment Action, Notice of Removal Ex. 1, Docket No. 1-1.

On August 23, 2013, Western Heritage removed the declaratory judgment actions to this court pursuant to the federal diversity statute, 28 U.S.C. §1332, and moved to consolidate the cases under Rule 42(a). See Def.'s Mem. in Support of Removal, Docket No. 2. Lark and Jones filed motions to remand, arguing that this court lacked jurisdiction because Lark, Jones, and Peck Investments are all Virginia citizens. See Motion to Remand, Docket No. 8. On October 31, 2013, the court granted Western Heritage's motion to consolidate and denied the plaintiffs' motions to remand. The court found that Peck Investments is properly aligned as a co-plaintiff in this action, thereby creating complete diversity of citizenship among the parties. See Mem. Op., Docket No. 15 at 5. The court also declined to abstain from adjudicating the contract interpretation issues presented. Id. at 6-8.

Western Heritage filed a motion for summary judgment on March 3, 2014, Docket No. 30. In this motion, Western Heritage asks the court to declare that it has no duty to defend the Peck Defendants in the underlying actions or to pay insurance benefits associated with any judgment or settlement in those cases. Alternatively, Western Heritage asks the court to declare that its duty to defend and indemnify the Peck Defendants is limited to $100,000 under the policy's assault and battery endorsement. The court held a hearing on this motion on August 20, 2014. The motion has been fully briefed and is now ripe for review.

4

## Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. When deciding whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Id. at 255; see also Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

"In a declaratory judgment action, an insurance carrier may appropriately move for summary judgment to determine whether it is obligated to provide coverage to an insured, where… there are no material ambiguities in the policy." St. Paul Reinsurance Co. Ltd. v. Ollie's Seafood Grille and Bar, LLC, 242 F.R.D. 348, 352 (D.S.C. 2007) (citing Highlands Ins. Co. v. Gerber Prods. Co., 702 F. Supp. 109, 11 (D. Md. 1988)). In fact, "[s]ummary judgment is particularly well-suited for the resolution of insurance coverage disputes because the construction of insurance contracts is a legal question." St. Paul Fire & Marine Ins. Co. v. Jacobson, 826 F. Supp. 155, 157 (E.D. Va. 1993), aff'd 48 F.3d 778 (4th Cir. 1995); see also Transcontinental Ins. Co. v. RBMW, Inc., 551 S.E.2d 313, 317 (Va. 2001) ("[I]nterpretation of the provisions of an insurance contract presents a question of law.").

## Discussion

### I. *Applicable Law:*

The parties assert, and the court agrees, that Virginia law governs interpretation of the insurance policy in this case. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496-97 (1941) (stating that a federal court sitting in diversity must apply the choice-of-law rules of the state in

5

which that court is located); Va. Code § 38.2-313 ("All insurance contracts on or with respect to the ownership, maintenance, or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth."); see also Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) (the law of the state in which an insurance contract is written and delivered governs its interpretation).

In Virginia, "courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they used in the document." Transcontinental, 551 S.E.2d at 318; see Blue Cross & Blue Shield v. Keller, 450 S.E.2d 136, 140 (Va. 1994) ("[A] court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy."). "Each component of an insurance contract 'should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." Id. (quoting Suggs v. The Life Ins. Co. of Virginia, 147 S.E.2d 707, 710 (Va. 1966)). Policy exclusions are likewise construed according to their plain language. See TRAVCO Ins. Co. v. Ward, 736 S.E.2d 321, 329 (Va. 2012).

Because insurers generally draft policy language themselves without any input from the insured, any ambiguities in that language are generally resolved in favor of the insured:

> [Courts find] in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. Language in a policy purporting to exclude certain events from coverage will be construed mostly strongly against the insurer.

Id. (quoting PBM Nutritionals, LLC v. Lexington Ins. Co., 724 S.E.2d 707, 713 (Va. 2012)). "A policy provision is ambiguous when, in context, it is capable of more than one reasonable meaning." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005). Nonetheless, "courts must not strain to find ambiguities." Id. "Contractual provisions are not ambiguous merely

6

because the parties disagree about their meaning." Nextel WIP Lease Corp. v. Saunders, 666 S.E.2d 317, 321 (Va. 2008).

Under Virginia law, "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." AES Corp. v. Steadfast Ins. Co., 725 S.E.2d 532, 535 (Va. 2012). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." Id. An insurer's duty to defend "is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." VEPCO v. Northbrook Prop. & Cas. Ins. Co., 475 S.E.2d 264, 265-66 (Va. 1996). However, "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." AES, 725 S.E.2d at 535-36.

With this legal framework in mind, the court will now consider whether Western Heritage must defend or indemnify the Peck Defendants in the underlying actions. The court will first examine Western Heritage's obligations under the general policy, and then turn to its duties under the assault and battery endorsement.

## *II. The Policy:*

Under the terms of the general liability policy, Western Heritage is only obligated to defend and indemnify the Peck Defendants for legal obligations that arise from "occurrences," or accidents. The underlying allegations in this case stem from intentional assaults. Western Heritage argues that these assaults do not constitute "occurrences" and therefore do not implicate its duty to defend or

7

indemnify the Peck Defendants under the terms of the general liability policy. The court agrees.

In the underlying actions, the plaintiffs assert various negligence claims arising from the assaults they allegedly suffered on December 4, 2010. See, e.g., Jones Complaint, Docket No. 4-1 (asserting claims of negligence, negligent training, negligent hiring, and negligent retention). However, "allegations of negligence are not synonymous with allegations of an accident." AES, 725 S.E.2d at 537; see also Nationwide Mut. Fire Ins. Co. v. Overstreet, 568 F. Supp.2d 638, 651-52 (E.D. Va. 2008) (use of the word "negligence" does not compel a court to find that a claim was an "occurrence" under Virginia law). The intentional actions of the Schooners employees, which are not covered by the general policy, cannot be converted into accidents, which would be covered, merely by the manner in which the plaintiffs have pleaded their claims.

For example, in AES Corp. v. Steadfast Ins. Co., the Supreme Court of Virginia examined an insurance policy under which Steadfast agreed to defend its insured, energy company AES, against any claim arising from an "occurrence," which was defined in the policy as "an accident." 725 S.E. 2d at 534. The Court found that this policy did not require Steadfast to defend AES against allegations that it had negligently damaged an Alaskan village "by causing global warming through the emission of greenhouse gases." Id. at 533. The Court reasoned that "[i]f a result is the natural or probable consequence of an insured's intentional act, it is not an accident," even if the complaint describes it in terms of negligence. Id. at 536. See also id. at 537 ("Whether or not [an] intentional act constitutes negligence, the natural or probable consequence of that intentional act is not an accident under Virginia law."). Because AES intentionally emitted greenhouse gases as part of its energy operations, the "natural or probable" environmental damage caused by those gases did not qualify as an "occurrence" requiring Steadfast to defend or indemnify AES. Id.

8

Likewise here, Lark and Jones allege that they were injured when Schooners employees intentionally assaulted them. See Jones Compl. ¶ 15, Docket No. 4-1 (averring that the Schooners' employees "maliciously attacked [Jones] from behind;…slammed [him] to the ground face-first,…pulled [his] arms in a backward motion and choked [him] from behind"); Lark Compl. ¶ 4, Docket No. 4-3 (alleging that the Schooners' employees "chased [Lark] through the parking lot, knocked him down, kicked and stomped him, severely breaking his leg and causing other bodily injuries."). The injuries allegedly suffered by Lark and Jones are clearly the "natural or probable" consequences of the violent acts alleged in their complaints. These injuries therefore do not qualify as "occurrences," and Western Heritage has no duty to defend or indemnify the Peck Defendants with respect to those allegations under the general policy.

The plaintiffs argue that Western Heritage must at least defend the Peck Defendants under the general policy because a credible argument can be made that the injuries alleged in the underlying actions resulted from "reasonable force to protect persons or property," triggering an exception to the "intended or expected injury" exclusion contained in the general policy. See Pl.'s Mem. in Opp. to Def.'s Mot. Sum. J. at 11-14, Docket No. 33. The plaintiffs rely on Copp v. Nationwide Mut. Ins. Co., 692 S.E.2d 220 (Va. 2010) to support this argument, but that case is distinguishable here. In Copp, the Supreme Court of Virginia considered whether Nationwide was obligated to defend Copp, its insured, in a lawsuit stemming from an altercation in which Copp claimed he acted in self-defense. 692 S.E.2d at 225. The Nationwide policy provided coverage for "occurrences," meaning accidents, but excluded coverage for "bodily injury…intended or expected by the insured," unless that injury was "caused by an insured trying to protect person or property." Id. at 221-22. The Court found that Nationwide was obligated to defend Copp, because Copp's affirmative assertion of self-defense precluded application of the "intended or expected injury"

9

exception. Id. at 225. The Court reasoned that "[t]he trier of fact could believe [Copp's self-defense argument] and return a verdict in his favor or it could disbelieve him and return a verdict against him. But the fact that the latter result might occur does not negate Nationwide's duty to defend in the first instance." Id.

The Copp Court, however, did not decide whether the underlying tort lawsuit in that case alleged an "occurrence," or accident, bringing it within the scope of the policy in the first place. The Court instead limited its decision to whether Copp's assertion of self-defense obviated application of the policy's exclusion for intended or expected injury. Id. at 223. The Supreme Court of Virginia assumed, without deciding, that the fight constituted an "occurrence." This assumption was amply supported by the record, which reflected that the plaintiff was injured when Copp struck him in the midst of a chaotic brawl involving multiple people. Id. at 222. Copp averred that he possibly struck the plaintiff accidentally while attempting to flee after he realized that he was outnumbered and began to fear for his safety. Id.

In this case, on the other hand, the underlying actions are based on allegations of violence that cannot be fairly characterized as accidental. As discussed above, these intentional acts do not constitute "occurrences" implicating the general policy at all. The court thus need not consider whether that policy's "expected or intended injury" exception – or the "reasonable use of force" exception to that exception – applies here. Furthermore, the plaintiffs have not proffered any defensive pleadings from the underlying actions showing that they rely on the reasonableness of the Schooners' employees as an affirmative defense. See Copp, 692 S.E.2d at 225. The underlying complaints themselves certainly do not suggest that those employees used "reasonable force" to protect persons or

10

property from injury that night.[1] See, e.g., Lark Compl. ¶ 4 (stating that the Schooners' employees "knocked [Lark] down, kicked and stomped him, severely breaking his leg...").

Because the underlying actions do not allege "occurrences," the court finds that Western Heritage has no duty to defend or indemnify the Peck Defendants under the general policy.

### III. *The Assault and Battery Endorsement:*

The court's decision with respect to Western Heritage's obligations under the general policy does not conclude its analysis, however. The policy issued to Peck Investments includes a number of endorsements, each of which modify the policy's terms. In particular, the policy's assault and battery endorsement provides limited coverage for "all sums [that the insured] become[s] legally obligated to pay as 'damages' because of... 'bodily injury'...to any person arising out of an Assault and/or Battery." See Answer Ex. 2 at 87. This endorsement also provides that Western Heritage will defend the insured against suits seeking damages "to which this insurance [applies]," up to the applicable liability limits in that endorsement. Id. Thus, having found that the general policy does not require Western Heritage to defend or indemnify the Peck Defendants in the underlying actions, the court must now consider whether the assault and battery endorsement does so.

Western Heritage argues that the assault and battery endorsement does not provide any coverage in this case. Western Heritage reasons that, because "[e]ach component of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized," Transcontinental, 551 S.E.2d at 318, the assault and battery endorsement must be read in conjunction with the general policy's "occurrence" limitation. Western Heritage contends, therefore,

---

[1] The court declines to consider the deposition testimony submitted by the plaintiffs in support of this argument. The "eight corners rule" requires the court to consider only the face of the insurance policy and the underlying pleadings to determine whether the policy at issue provides coverage. See AES, 725 S.E.2d at 535. Furthermore, that testimony concerns questions of fact regarding Peck Investments' liability to Lark and Jones, which must be resolved in the underlying actions themselves. See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004).

11

that the endorsement applies only to accidental injuries that result from intentional assault.

The court disagrees with this interpretation. The endorsement's plain language demonstrates that it operates separately from the general policy. It states in large capital letters that it "CHANGES THE POLICY" and that it "modifies [the] insurance provided" under the general policy. Answer Ex. 2 at 86. The endorsement provides that "[f]or the [additional] premium shown below, [Western Heritage] agree[s] to afford coverage with respect to Assault and/or Battery Liability <u>only as indicated on this Coverage Form and subject to the liability limits and provisions set forth in this Coverage Form</u>." Id. (emphasis added). The endorsement then states that it provides coverage for "bodily injury…arising out of Assault and/or Battery," which is limited as "stated in [the] coverage form":

> The limit of liability stated in this coverage form as applicable to each Event is the most [Western Heritage] will pay for all "damages" arising out of… "bodily injury"…because of assault and/or battery, regardless of the number of insureds, persons injured, claims made or suits brought or persons or organizations making claims or bringing suits.

Id. at 87-88 (emphasis added). The assault and battery endorsement is repeatedly limited to its own terms, which clearly state that Western Heritage will provide coverage for damages arising out of assault and battery. Nothing in the endorsement suggests that those damages must also arise out of an "occurrence," or accident. That interpretation of the endorsement would be plainly counterintuitive.

Reading the assault and battery endorsement as providing separate coverage for assaults does not conflict with the general policy; instead, it "effectuates the intention of the parties" in executing this endorsement in the first place. Transcontinental, 551 S.E.2d at 318. The general policy provides no coverage whatsoever for damages arising from intentional acts like those alleged in the underlying actions – both because those acts do not qualify as "occurrences" under the general policy, as discussed above, and because the policy explicitly excludes coverage for damages arising from assault and battery. See Assault and Battery Exclusion, Answer Ex. 2 at 79. Peck Investments, however, separately bargained for the additional assault and battery endorsement. The logical purpose of this

12

endorsement was to provide Peck Investments with additional coverage that it otherwise would not have enjoyed under the general policy – coverage for assault and battery. Applying the general policy's "occurrence" requirement to the endorsement would render it all but worthless, contrary to the parties' intent.[2] The court thus finds that Western Heritage must defend and indemnify the Peck Defendants under the terms of the assault and battery endorsement.[3]

The amount of coverage afforded to the Peck Defendants under the assault and battery endorsement presents a closer question. In the endorsement, Western Heritage agrees to defend and indemnify the Peck Defendants "subject to the liability limits" set forth in the endorsement. Answer Ex. 2 at 86. The endorsement, in turn, provides for $100,000 of coverage per "Event," and $300,000 in the aggregate. Id. at 87. "Event" is defined as "an act or series of acts based on or arising out of the same assault and/or battery." Id. at 88. The endorsement further provides that Western Heritage 'shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in this Coverage Form has been exhausted." Id. at 87.

The issue before the court is thus whether the assaults alleged in the underlying actions constitute one "Event" or two. Western Heritage contends that the assaults constitute a single event, because they were "borne of a series of facts arising from the same assault and battery." Def.'s Mot. Summ. J. at 16, Docket No. 31. Specifically, Western Heritage argues that Lark and Jones each

---

[2] The court believes that the plain language of the assault and battery endorsement reflects the parties' intent for it to operate independently from the general policy's "occurrence" limitation. To the extent that Western Heritage intended otherwise, the endorsement's failure to clearly state as much renders it ambiguous. See Res. Bankshares, 407 F.3d at 636 (stating that an insurance provision is ambiguous when it can be fairly read as having more than one meaning). Ambiguities should be resolved in favor of providing coverage to the insured. See TRAVCO Ins. Co. v. Ward, 736 S.E.2d at 329.

[3] The case law cited by Western Heritage does not compel a different result. Those decisions focus on whether intentional acts are covered by "occurrence"-based liability policies. See AES, 725 S.E.2d at 537; Overstreet, 568 F.Supp.2d at 651-52 (holding that intentional sexual assault did not constitute an "occurrence" covered by a homeowners policy); Norman v. Ins. Co., 239 S.E.2d 902, 905-06 (Va. 1978) (holding that shooting was not an accident covered by homeowners policy). None of those decisions consider a policy including an endorsement that explicitly provides additional coverage for specific situations, like the one at issue here. Other courts have assumed that similar endorsements provide coverage in similar circumstances. See Flowers v. Max Specialty Ins. Co., 761 S.E.2d 787, 798 (W.Va. 2014).

13

ventured outside Schooners that evening to check on Jerome Mann, another member of their party, who had been escorted out of the restaurant by Schooners employees and assaulted in the parking lot. Id. at 17. Western Heritage contends, therefore, that the subsequent assaults of Lark and Jones constitute part of the "series of acts based on or arising out of" the assault of Mr. Mann. Id. The plaintiffs, on the other hand, assert that Lark and Jones each suffered his own "assault and battery," according to the plain meaning of that term. Each of those assaults, in turn, is comprised of "its own… act or series of acts" that forms one "Event" giving rise to $100,000 in coverage under the terms of the assault and battery endorsement. See Pl.'s Br. in Opp. at 20, Docket No. 33.

The court agrees that the underlying actions likely allege two separate "events" under the plain language of the assault and battery endorsement. The term "assault and battery" is not defined in the endorsement itself. Under Virginia law, however, "[a]ny touching by one of the person or clothes of another in rudeness or in anger is an assault and battery." Lynch v. Commonwealth, 109 S.E. 427, 428 (Va. 1921). Each alleged assault naturally involves an "act or series of acts" committed by the Schooners employees. Western Heritage's interpretation, on the other hand, creates more questions than it answers. For example, suppose that Lark and Jones had left Schooners peaceably that evening, but then returned to the restaurant the following day to seek revenge on Mr. Mann's behalf. Would their actions nonetheless constitute an "act or series of acts based on or arising out of" Mr. Mann's assault? What if they returned some weeks or months later? What if other friends or family sought retribution for Mr. Mann's assault at a later date, even though they were not members of his party at Schooners that night? Western Heritage's suggestion that one assault can trigger a chain reaction of various other assaults that extends for some indeterminate period of time simply strains reason.

Ultimately, however, the court need not determine the precise contours of the definition of "Event" contained in the policy's assault and battery endorsement. That definition is clearly

14

"capable of more than one reasonable meaning." Res. Bankshares., 407 F.3d at 636. This ambiguity requires the court to construe that term in favor of the insured. See TRAVCO Ins. Co. v. Ward, 736 S.E.2d at 329. The court thus finds that the assaults alleged in the underlying actions constitute two separate "Events," each giving rise to $100,000 in coverage pursuant to the terms of the assault and battery endorsement.

## Conclusion

For the reasons stated, Western Heritage's motion for summary judgment is granted in part and denied in part. Western Heritage's duty to defend and indemnify the Peck Defendants in connection with any judgment or settlement in the underlying actions is limited to $100,000 for each event alleged in the underlying actions, or $200,000 total, pursuant to the terms of the assault and battery endorsement appended to the general commercial liability policy issued to Peck Investments.

ENTER: This 31st day of October, 2014.

_____
Chief United States District Judge